hLOBRANO, Judge.
Plaintiff, Frederick John Creppel (Crep-pel), appeals from the dismissal of his suit against Tidewater Marine Service, Inc., Ti-dex, Inc., and Twenty Grand Marine Service, Inc. (hereinafter referred to collectively as “defendants”). The issue for review is whether the trial court abused its discretion in dismissing Creppel’s suit because of his failure to comply with a discovery order. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.
On or about January 22, 1992, Creppel injured his back while working in the course and scope of his employment as a deek-hand/tankerman for Tidewater. At the time of his injury, Creppel was working aboard the MTV Augusta in the Mississippi River. Creppel filed suit against Tidewater and its insurer on April 24, 1992, seeking damages under the Jones Act and general maritime law. Creppel filed an amended petition on July 29, 1993, adding Tidex and Twenty Grand Marine as defendants. At some point unclear from the record, Tidewater filed a reconventional demand against Creppel, seeking to recover maintenance and cure benefits which had been paid to Creppel.
During the course of the proceedings below, disputes arose as to the amount Creppel should receive for maintenance and cure benefits, as well as to whether he required surgery for his injury. These issues were resolved in favor of Creppel, who eventually underwent two back operations and continued to receive maintenance and cure benefits. This appeal concerns a separate issue arising out of Creppel’s failure to submit to an independent medical examination (an IME) by a neuropsychiatrist.
Rlt is undisputed that Creppel failed to attend scheduled neuropsychiatric IMEs with Dr. Rennie Culver (Dr. Culver) on four occasions: August 18, 1993, September 22, 1993, October 26, 1993, and February 22, 1994. The first two IMEs were scheduled by the parties, without intervention of the trial court. However, when Creppel failed to attend his second scheduled IME, defendants filed an unopposed motion to permit a neu-ropsychiatric IME, pursuant to La.C.Civ.P. art. 1464. In their motion, defendants stated that they were entitled to an IME because Creppel had placed his mental condition at issue. In addition, defendants stated that Creppel’s attorney had no objection to the entry of an order requiring Creppel to submit to a psychiatric evaluation.
On September 29, 1993, the trial court ordered Creppel to submit to a psychiatric IME by Dr. Culver on October 26, 1993. When Creppel failed to attend his court ordered IME on October 26, 1993, defendants filed a motion to dismiss Creppel’s suit under La.C.Civ.P, art. 1471. Defendants alleged that they had incurred expenses as a result of Creppel’s failure to attend three scheduled IME’s, and that neither Creppel nor his attorney had informed defendants that Creppel would not be attending the scheduled IMEs. Among the documents filed by defendants in support of their motion to dismiss was the following letter from Dr. Culver, dated October 26, 1993:
These IME appointments are blocked out in two hour segments. Patient failed to cancel within a reasonable time. Mr. Creppel was scheduled to be seen at 9:15 [on October 26, 1993] and did not arrive until 10:45. This did not allow enough time for an evaluation.
Creppel did not file an opposition to defendants’ motion to dismiss, and additionally failed to appear at the hearing on defendants’ *1073 motion. On November 29, 1993, the trial court dismissed Creppel’s petition and awarded defendants $675.00 for Dr. Culver’s medical charges, plus $300 in attorney’s fees.
Counsel for Creppel filed a motion for reconsideration/new trial on November 30, 1993, asserting that due to a scheduling error, counsel had been unaware of the date of the hearing on defendants’ motion to dismiss. Counsel additionally stated that he had been unable to contact Creppel. Counsel argued that dismissal of Creppel’s case would be an ^“unreasonably drastic punishment” for failure to attend an IME, and suggested that an assessment of costs would be more appropriate.
On January 13, 1994, Creppel filed the affidavit of Barbara Regua (Regua), a secretarial assistant for Creppel’s attorney. According to her affidavit, Regua was responsible for taking Creppel to his October 26,1993 IME. In her affidavit, Regua explained Creppel’s failure to attend his October 26, 1993 IME as follows:
Prior to the time of the appointment, I called Dr. Culver’s office to inform them that I was having car trouble and that we would be late for the appointment. I inquired whether we should reschedule the appointment, and was told that would not be necessary. Mr. Creppel and I arrived at Dr. Culver’s office at 9:30 a.m., making us fifteen (15) minutes late for the appointment.
A member of Dr. Culver’s staff escorted Mr. Creppel and me to a waiting room in the back of the office. After waiting approximately five minutes, the staff member told us that Dr. Culver had other patients to see that day, and that he would not see Mr. Creppel. No further information was provided regarding this appointment.
The trial court granted Creppel’s motion for reconsideration/new trial on January 14, 1994. Pursuant to the trial court’s order of January 14, the parties scheduled a fourth IME with Dr. Culver on February 22, 1994. When Creppel failed to appear for his fourth scheduled IME, defendants filed a second motion to dismiss.
On March 23, 1994, Creppel filed a motion requesting that the court tailor a sanction less drastic than complete dismissal of all of his claims. In his motion, Creppel argued:
Plaintiff would suggest to the Court that outright dismissal of all of his claims, due to his failure to attend a psychiatric IME, is an abuse of discretion and such a sanction is not well tailored to the non-compliance. This is especially true if one were to examine the entire controversy before the Court, and realize the psychiatric component of this case is relatively minor, as opposed to the personal injury or physical aspects and other damage aspects. The only reason for the proposed IME is allegedly due to the fact that plaintiff spoke with a psychiatrist or similar physician while confined in Methodist Hospital. Beyond that, there has been no psychiatric treatment, per se.
Before the Court imposes the harsh sanction of total dismissal, plaintiff would urge it to make simple inquiries: (1) Of what importance is a psychiatric IME to the defendant? (2) What prejudice has and will the defendant suffer because of the failure to attend the IME? (3) Is there a sanction, short of Utotal dismissal, which is a more appropriate remedy for plaintiffs non-compliance? (emphasis original).
Creppel suggested that an appropriate sanction would be denial of his right to present evidence of his emotional or mental damages.
On March 28, 1994, the trial court dismissed Creppel’s entire suit with prejudice. In its judgment, the trial court stated:
This Court reinstated plaintiffs case [on January 14,1994] and admonished plaintiff that he had one last chance to submit to evaluation by Dr. Culver, which evaluation was subsequently scheduled for February 22, 1994. This Court advised plaintiff in clear and direct terms that if he did not submit to the evaluation by Dr. Culver, his ease would be dismissed, with prejudice.
The judge also ordered plaintiff to pay medical fees incurred by defendants for plaintiffs failure to appear at his scheduled IMEs as well as attorney’s fees and costs.
*1074 Creppel brought this appeal, arguing (1) that defendants did not have good cause for ordering a psychiatric IME, and (2) that dismissal of his suit was an abuse of discretion.
The record indicates that Creppel did not object to undergoing a psychiatric IME. Because he failed to object below, the question of whether defendants had good cause for ordering Creppel to undergo a psychiatric IME will not be considered for the first time on appeal. Rule 1-3, Uniform Rules of Louisiana Courts of Appeal.
The dispositive issue in this case is whether the trial court abused its discretion under La.C.Civ.P. art. 1471 in dismissing Creppel’s suit for failure to comply with two discovery orders. La.C.Civ.P. art. 1471 provides, in part:
If a party * * * fails to obey an order to provide or permit discovery, ⅜ * ⅜ the court in which the action is pending may make such orders in regard to the failure as are just, and among others the follow-ingr * ⅜ *
An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party. * * * (emphasis added).
A trial court has much discretion in imposing sanctions for failure to comply with a discovery order, and a choice of sanctions will not be reversed absent a clear showing Uthat the trial court abused its discretion. Columbia Homestead Ass’n v. Arnoult, 615 So.2d 1 (La.App. 4th Cir.1992); Lee v. United Fire & Cas. Co., 607 So.2d 685, 687 (La. App. 4th Cir.1992). Dismissal with prejudice is the most severe sanction, and should be imposed only in extreme circumstances where the plaintiff is clearly aware that noncompliance will result in dismissal. Id.; Joyce B., Inc. v. Village Plaza Partnership, 625 So.2d 293, 294 (La.App. 4th Cir.1993), writ den. 631 So.2d 449 (La.1994).
In Horton v. McCary, 635 So.2d 199 (La.1994), the Louisiana Supreme Court recently set forth the following standards for determining when dismissal or default is appropriate under La.C.Civ.P. Art. 1471 for failure to abide by a discovery order:
Refusal to comply with court ordered discovery is a serious matter. Trial judges must have severe sanctions available to deter litigants from flouting discovery orders.
The Louisiana rule [i.e. La.C.Civ.P. Art. 1471], like Federal Rule 37,[1] allows the trial court to sanction a disobedient party with dismissal or a default judgment. Both dismissal and default are draconian penalties which should be applied only in extreme circumstances. Because the sanctions of dismissal or default involve property rights, those sanctions are generally reserved for the most culpable conduct. Federal district courts consider four factors before granting a default judgment: (1) whether the violation was willful or resulted from inability to comply; (2) whether less drastic sanctions would be effective; (3) whether the violations prejudiced the opposing party’s trial preparation; and (4) whether the client participated in the violation or simply misunderstood a court order or innocently hired a derelict attorney.
Dismissal and default are generally • reserved for those cases in which the client, as well as the attorney, is at fault. The record must support ‘a finding that the failure was due to ... wilfulness, bad faith, or fault.’
Id. at 203 (citations omitted).
In Horton, the Supreme Court reversed a judgment of default on the question of liability, even though the trial court warned defendants that failure to comply with discovery orders could result in a default judgment. In remanding to the trial court, the 16Supreme Court stated that “[t]he sanctions *1075 imposed [for failure to comply with discovery orders] should not extend to a default judgment on liability. Criteria to be considered in imposing any sanctions are the prejudice to plaintiffs and the willfulness of the defendants.” 635 So.2d at 204.
Under the factors set forth in Horton, we conclude that dismissal of Creppel’s entire suit was an abuse of discretion. The record establishes that Creppel’s failure to attend a psychiatric IME was of minimal prejudice to defendants’ trial preparation, and that less drastic sanctions were available to penalize Creppel, as well as to effectively mitigate any prejudicial effect of his failure to comply with discovery orders. We therefore hold that, in addition to the medical and legal fees and costs awarded by the trial judge, Creppel is prohibited from introducing any evidence concerning his mental or emotional claims, and all portions of his pleadings which refer to said claims are ordered stricken from the record. We reverse the dismissal of his entire suit, and reinstate his case except as set forth above. All costs of these proceedings are assessed to the appellant.
AFFIRMED IN PART; REVERSED IN PART; RENDERED.

. In Allen v. Smith, 390 So.2d 1300 (La.1980), the Louisiana Supreme Court noted that Rules 37(b) and (d) of the Federal Rules of Civil Procedure are identical to La.C.Civ.P. arts. 1471 and 1473, and concluded that jurisprudence interpreting and applying Rule 37 is therefore pertinent to application of the Louisiana rules. Id. at 1301.